MORTON GOLDSTEIN and the ESTATE OF MYRNA GOLDSTEIN, Deceased, MORTON GOLDSTEIN, Administrator, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent ESTATE OF MYRNA GOLDSTEIN, Deceased, MORTON GOLDSTEIN, Administrator, and MORTON GOLDSTEIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Goldstein v. Commissioner
Docket Nos. 6521-70, 6742-72.
United States Tax Court
T.C. Memo 1975-355; 1975 Tax Ct. Memo LEXIS 19; 34 T.C.M. (CCH) 1539; T.C.M. (RIA) 750355; December 17, 1975, Filed Abraham H. Spilky, for the petitioners. Russell F. Kurdys, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: In these consolidated cases respondent has determined deficiencies in petitioners' income tax as follows: TYE
Amount of
Addition to Tax December 31,
Deficiency
Sec. 6651(a)
1967
$5,807.25
1968
3,893.51
$389.35 [1]
1969
2,171.18
1970
4,164.48
The sole issue for our decision is whether, during each of the years involved, petitioner Morton Goldstein, d.b.a. G & G Leather Co., made *20 cash expenditures for purchases of raw material used in fabricating its end products which it had for sale. Respondent claimed at trial that increased deficiencies should be determined, sec. 6214(a), for each year as follows: [2] TYE
Amount of Claimed,
Amount of December 31,
Increased Deficiency
Increase
1967
$ 6,389.90
$ 582.65
1968
7,169.90
3,276.39
1969
10,326.21
8,155.03
1970
13,535.90
9,371.42
FINDINGS OF FACT Some of the facts have been stipulated and are so found. Morton and Myrna Goldstein were husband and wife during the years involved with their residence at Woodmere, New York at the time the petitions were filed. Myrna Goldstein died intestate on March 28, 1971. Morton Goldstein (sometimes hereinafter referred to as "Goldstein" *21 or "petitioner") was duly appointed as administrator of his deceased wife's estate on February 15, 1973. Morton and Myrna Goldstein filed a joint income tax return on a calendar year basis for each year involved with the District Director of Internal Revenue, New York, New York. During the years involved, Goldstein owned and operated G & G Leather Co. at New York, New York as a sole proprietorship using an accrual method of accounting. G & G Leather Co. ("G & G") fabricates and sells many varieties of small leather items, such as key cases, luggage tags, and billfolds, cut from pieces of scrap leather by dies. Goldstein has been in the leather cutting and fabricating business for over 25 years. During the years involved, on each Friday Goldstein drew a check on G & G's checking account to the order of "cash" or "cash payroll." The amount drawn each week would exceed G & G's payroll requirements by a few hundred dollars. Goldstein did not pay his own salary from these cash payroll checks but instead would draw checks payable to himself as his needs required. The cash difference between the above payroll checks and G & G's payroll requirements was kept in Goldstein's physical possession *22 and control, either in his office or in his pocket. Goldstein kept for each year involved a "diary" allegedly recording cash purchases of leather for G & G's business. There are no entries in the "diaries" of full names, addresses, or telephone numbers of persons or companies from whom Goldstein allegedly bought leather. Appearing in these diaries under various dates are either initials or nicknames with no address shown, or names of New York streets, and the kind and quantity and/or cost of leather purchased. Many entries are illegible. Also included in the entries are occasional notations of tips, gifts, travel and entertainment expenses, and reminders to check with or call certain unnamed individuals identified only by initials or nickname. Though apprised of the inadequacy of the entries to substantiate G & G's alleged cash purchases as early as June 3, 1969, Goldstein continued to keep his "diaries" in the same manner. Goldstein has never provided the Internal Revenue Service with a single address or telephone number of any company or individual that allegedly sold scrap leather to him for cash. Only at trial did Goldstein decipher any of the initials or nicknames, and then *23 only as to some of the entries. G & G's regular leather purchases were from suppliers that Goldstein paid by check drawn on G & G's checking account. We find as an ultimate fact that Goldstein did not purchase scrap leather for cash as claimed on petitioners' returns during any of the years involved. OPINION Petitioners bear the burden of proof with respect to the sole issue before us of whether Goldstein made certain purchases of scrap leather for cash in the course of G & G's business. [3]Rule 142(a), Tax Court Rules of Practice and Procedure. We hold that petitioners have failed to carry the burden of proof and that they have not substantiated any cash expenditures for leather. Petitioners' arguments are founded on the testimony of Goldstein, particularly as it related to the so-called "diaries. *24 " Upon observing the demeanor of Goldstein as he testified, listening carefully to his testimony over more than a week of trial and after reviewing the transcript of the proceedings, we simply do not believe him. See, Quock Ting v. United States,140 U.S. 417, 420-421 (1891). We will not delve into the many instances of Goldstein's self-contradicting, plaiant and back-peddling answers. When it suited him he represented his memory to be remarkably retentive, so that on one occasion he could exactly recall the unrecorded amount he had paid for a quantity of leather purchased in a single transaction that had occurred seven years prior to his testimony, merely by looking at one "diary" entry. On the other hand, he could not recall one address of any business establishment which he said he had visited personally and from which he had allegedly bought scrap leather for cash. Later, he testified that he knew all of the people with whom he had had dealings and the price he had paid for certain items. Petitioners presented one expert witness who had himself been in the leather cutting business for 25 years. This witness was unfamiliar with any suppliers in the leather cutting *25 business who were itinerant peddlers of scrap leather. Goldstein had supposedly purchased much of the leather that he bought by cash from such peddlers. We think Stanley Rosenstein,32 T.C. 230 (1959) and the cases cited therein, are on point. In the instant case as in Rosenstein, petitioners refused to divulge sufficient information to permit a check or verification of the alleged cash purchases. The remark of Mr. Justice Holmes in Rock Island &c. R.R. v. United States,254 U.S. 141, 143 (1920) retains its vitality today: "Men must turn square corners when they deal with the Government." Respondent bears the burden of proof with respect to the increases in deficiencies. Rule 142(a), Tax Court Rules of Practice and Procedure. We hold that he has failed to carry his burden. Respondent presented no evidence. Rather, he argues that we should determine increased deficiencies from petitioners' evidence. At trial evidence was received that purported to represent all of G & G's purchases of leather by check. [4] The total cost of such purchases by check proved at trial was less than the amount respondent allowed for leather purchased in the statutory *26 notice of deficiency. Therefore, respondent argues, because total purchases by check have been proven and because petitioners have not proved any purchases by cash, no amount for leather purchased may be allowed in excess of the amount of purchases by check. Logically respondent's position is sound, assuming that all purchases by check have been proven. [5] However, the argument, if accepted, would effectively place on petitioners the burden of proof with respect to the increased deficiencies. The pleadings in this case do not place on petitioners a burden of proof with respect to the total amount of G & G's leather purchases. Petitioners' burden of proof is with respect to a specified amount of cash purchases of scrap leather represented by the difference between the amount claimed on their tax returns for G & G's leather purchases and *27 the amount allowed by the statutory notice. Respondent must make an affirmative showing in order to carry his burden of proof. See, TennesseeConsolidated Coal Co.,15 T.C. 424, 432 (1950); see also, George B. Markle, Jr.,17 T.C. 1593, 1599 (1952). He has not done so and, therefore, petitioners are not liable for increased deficiencies. Decision will be entered under Rule 155.
Footnotes
1. Respondent has conceded the addition to tax.↩
2. Respondent was given permission at trial to file a motion to amend his pleadings to reflect the increased deficiencies which he now claims should be determined. Rule 41, Tax Court Rules of Practice and Procedure. We grant respondent's motion so to amend his answer. Of course, as to the increased deficiencies, the burden of proof is respondent's. Rule 142(a), Tax Court Rules of Practice and Procedure.↩
3. Petitioners argue on brief that certain entries in the "diaries" for tips, gifts, and travel and entertainment expenses are deductible under section 162, Internal Revenue Code of 1954. This issue was not raised by the petitions and is deemed conceded. Rule 34(b)(4), Tax Court Rules of Practice and Procedure; Note to Rule 34(b), 60 T.C. 1085↩.
4. Petitioners attempted to prove the amount of cash purchases by showing the difference between total leather consumed by G & G and total leather purchased by check. The difference purported to be the amount of leather purchased by cash. The since qua non of the proof of this theory was Goldstein's testimony which we are not able to believe.↩
5. An assumption that we cannot make, being based as it is on Goldstein's testimony.↩